When law enforcement provides a tip to a utility company investigator that someone is growing marijuana and stealing power to do so, and the utility company investigator in that conversation also gives the law enforcement officer information that is mutually beneficial to their investigations, and the two parties have a history of working cooperatively on such cases, then the utility company's subsequent search is subject to Fourth Amendment scrutiny. How is this case different from Cleveland? In Cleveland, Your Honor, Where we have some of the same parties even. You do, the exact same party, Mr. Sprague of PGE. In the Cleveland case, there was the tip about the illegal activity came directly to PGE from an anonymous source. It did not come from a law enforcement source. There also wasn't the record of a history of cooperation between the two investigators as there is in this case. In this case, we have in the record more than 40 phone calls in the previous year between those two specific investigators showing how they work together. In Cleveland, PGE But is that the distinguishing feature, or isn't it whether or not the private party has a completely independent, in this case, economic motive to, and a contractual right, as I understand the subscriber agreement, to verify that its customer is paying for all the electricity that it's using, and therefore a correlative right to enter onto the customer's property for purposes of determining that the meter is accurately recording all the power that the customer is taking? We don't dispute that PGE had a legitimate motive in this case. However, its independence from the law enforcement motive in this case I think is different from the facts of Cleveland. But you're trying to suggest that they're not independent because they've worked together in the past and that the tip came from the police. If the focus of our analysis is the motivation for the private surge, Cleveland seems to say that the power company has a perfectly legitimate reason to enter onto the subscriber's property, and I guess the unspoken part of Cleveland is it doesn't really matter who told the power company that there might be a problem with theft of electricity. The power company has an interest, as any business does, to avoid theft of its services. There's no doubt that PGE has that interest and that that's a legitimate interest. In Cleveland, though, this court did say, did go to the trouble to point out that law enforcement did not plant the idea of reading the meter in that case. In other words, it- That's the question I'm asking you is, so what? What difference does it make that it was a sheriff's deputy who called the power company to say, you guys might want to check Mr. Boothrood's meters because we think he might be stealing power? The difference is the intent of the PGE employees when they conduct their search, and that's what the test says. That's what the test says. Wasn't the testimony was we went onto the property to see if our customer was stealing power? Yes, but there are other factors that show that there was an additional intent, and that was to further the law enforcement motive of doing a search at that property. Well, I guess it gets back to my question then. Does that really make a difference? In other words, doesn't Cleveland say, as long as the motivation is to go onto the property for purposes of determining whether the customer's stealing electricity, who cares that there may be other reasons? No, Cleveland does not say that. Cleveland specifically says that an independent motive will not always insulate a search from Fourth Amendment scrutiny. It said in that case, PGE's legitimate motive, even though there was a dual motive to assist the police, did not turn the search into state action. Well, here we have a search without any presence of law enforcement officers, no notice to the Clackamas County Sheriff that the folks were going on the property. Why doesn't Cleveland control? Why isn't this case more like Cleveland than any other case you can cite us to? I'd argue with the idea that there was no notice to the Clackamas County Sheriff's Office. That day, PGE didn't tell them that they were going, but in the original phone conversation that Sprigg had with Deputy Thoroughman, he did say, I have access to the property. I would like to inspect a meter if that doesn't interfere with your investigation. Meanwhile, Deputy Thoroughman continues his investigation, issues subpoenas for the records, and within 10 days, at the outside, PGE is there to conduct its search. So would you have the rule be that the power company can never go on to the subscriber's property when the tip came from the law enforcement officer? No, I would not. If the law enforcement agency merely tipped off the utility company, and there wasn't also evidence of the two agencies assisting each other in advance of that search, then I would not ask the court for the same rule. But at this point, the two agencies are not assisting one another in regard to Mr. Boothroot's property. At this point, all you have is the tip from the sheriff to the power company, saying you might want to look into whether or not your customers steal an electricity. Actually, and then I mean... So how are they working together on Mr. Boothroot's case at that point? In the excerpt of record at pages 44 to 45, the court will see the conversation as described by Mr. Sprague that he had with Deputy Thoroughman in that initial phone call. Not only did he receive the tip about what was happening at Mr. Boothroot's property, but as Deputy, excuse me, as Mr. Sprague described it, he said there was an inquiry about the kilowatt usage at that property. PGE supplied that information, and that information was consistent with the tip that Deputy Thoroughman had received. So it's helping his investigation in shoring up the information he's got. It's also Mr. Sprague who says to Deputy Thoroughman, he says, I made the initial observation that there may have been a marijuana grow there, because Mr. Sprague looks at the records believing there must be a marijuana grow there. He looks at the records and sees only ordinary usage, tells that to Detective, excuse me, to Deputy Thoroughman, and that that helps Deputy Thoroughman in his approach to the case, because now he's got confirmation from PGE that if that's happening at the property, this person might be stealing power and growing marijuana. Doesn't that go the other way? He looks at the record and it doesn't show extraordinary usage, which would tend to suggest that there isn't excess drain on power. I mean, until they actually go to the property to see whether or not the wires have been spliced around the meter, that the fact that the power records show normal usage doesn't confirm or deny anything. The district court had the same inquiry of Mr. Sprague, Your Honor, and Mr. Sprague explained that that's exactly what made him suspect that there was a marijuana grow there, because in his experience, people who are growing marijuana are stealing power to do so, so that their usage records would reflect normal usage, as opposed to excess usage. If there were a lot of usage, then that could also be probable cause for the police, because they would go in and say, why are you using so much electricity? So once again, we have encountered the Holmesian dog that didn't barf. No, I think that the difference in focus is, I believe I understand your concern about what difference does it make if the same sort of thing would have happened, if this search could have happened and PGE had the right to go there anyway. But I'd ask the court to come back to what the Miller test focuses on, and it's a focus that is rare in Fourth Amendment jurisprudence these days, because it is on the intent of the party conducting the search. It's not about what advantage did the police gain from that. It's purely a question of the private party's intent, once we're past the first prong of the test. But didn't the district court find that the intent was to verify whether or not the customer was stealing power? The district court found that that intent was there, but the district court also found that several pieces of evidence were not relevant to its inquiry. And in making that finding, the court erred as a matter of law. And there were two things in particular that the court erred in finding were irrelevant to the court's determination. The first was the law enforcement source of the tip. In Cleveland and in Miller itself, there is emphasis in this court's case law that the origin of the information, in other words, what prompts the private party's action, is relevant to that private party's intent. And that's true, as I'm sure the court's aware, in almost any criminal context. What makes us act is part of the evaluation of what our intent later is in acting. The second thing that the district court said was irrelevant to its inquiry was PGE's actions in unlocking the gate to allow the police entry onto Mr. Bluthroyd's property. The court said that that was irrelevant because the police gained no advantage from that action. Well, at that point, they had probable cause to arrest him for the theft of the power, did they not? They did. So the fact that they entered onto his property, and I guess he was sitting in his truck further up the driveway when they encountered him. They met on the driveway with the police going up and him coming up. So constitutionally, that's relatively insignificant, isn't it? It's insignificant in the ordinary Fourth Amendment analysis, for example, inevitable discovery cases, things of that sort. And that's what the district court was doing. The district court said, well, the police could have just hopped the fence. Absolutely true. But the point in this case is, what does that action of unlocking the gate show about the intent of the private party who unlocked the gate? Now, it's clear that PGE did not have the authority to unlock Mr. Bluthroyd's gate for that purpose. It had that lock on there with Mr. Bluthroyd's consent for the purpose of accessing his electrical meter. When they used their key to open up their lock on Mr. Bluthroyd's gate to let the police in, what that shows is PGE's intent to assist the police. Maybe at that time, but are you asking us then to retroactively apply to the prior entry by the two meter readers, which they clearly have a right to do under the subscriber agreement in order to conduct their initial power theft inquiry? Once again, I think in the ordinary motion to suppress Fourth Amendment context, that would be a problem. What happens after a search is usually irrelevant. In this context, that's not the case because it goes to the private party's intent. So the answer to my question is, yes, that it does relate back. It does relate. It is part of- As evidence of their- As evidence of their intent. Absolutely. Yes. Yes. You know, you've run over just a bit. Why don't we hear from the other side and then we'll give you a little chance to respond. Thank you, Your Honor. Good morning, Your Honor. May it please the court, Counsel Charles Stuckey for the government. Could you please keep your voice up? I can't hear you. I'm sorry, Your Honor. Is that any better? Not much. All right. I'll try to speak way up. Okay. Thank you. In the appellate's reply brief, there's some issue made about a portion of my brief where I state that the police did not know or did not acquiesce in the search. Judge Haggerty stepped right over that and assumed and said in his findings that they did know. What I meant in my brief was that they didn't specifically know at the moment, and that's important to the facts as it applies to the law in the case, because what did happen is that Mr. Sprague received his information and, quote, put it in a basket and waited for the time when we were otherwise in the neighborhood and we would look at the meter. That shows routine response to a piece of information, which he also said we get from all manner of sources all the time. We have a very strong interest to the tune of $3 million a year in knowing whether or not people are stealing our power. In a way, I'm a little less interested in whether it's routine on the part of PGEs than I am in whether it is done at the request of the law enforcement agency. The tip comes from law enforcement. In response to the tip from law enforcement, we then have the entry onto the property. And in that respect, it's different from Cleveland. I'm trying to figure out or we're all trying to figure out whether that difference is enough. I do note that in Cleveland, the court specifically says it was PGE, not the police, who initiated the plan. So the Cleveland court specifically says, okay, this is not that case. All of a sudden, we have that case. I noticed also in Cleveland at the end, in this case, the government's participation was not so extensive as to trigger Fourth Amendment scrutiny. I have the same question for you, really, as I had for the other counsel. How is this case different from or, in your view, the same as Cleveland? Because you'd like this to be a Cleveland case, obviously. Obviously, I would, Your Honor. There's a line in Cleveland that when PGE receives such a tip, they routinely call the police. It's in the first line of a paragraph. I've got it here in front of me. I don't see it yet. Your Honor, I have the kind of copy that comes from the Lexus. That's okay. How far down? It's not a very long opinion. We can find where you're talking about. It would be after the word facts on the first page, it's the second paragraph. Okay. In such a case, it is quite common for PGE to contact the police. Okay. Assume for a minute that when Mr. Sprague decides to go to Mr. Boothroyd's property, on that day, if he had called the police and said, I'm going to check a meter, please come with me, we'd be, I submit, on all fours with Cleveland. But they didn't even do that. They went up there. Yes, they had the tip. And yes, the tip came from Deputy Thurman. But it's then not acted on as if we're helping a police do anything. It is acted on in the normal manner of a theft of power inquiry. And he on his own, without calling the sheriff's office, after the lapse of ten days or two weeks, goes to the property, goes to Mr. Boothroyd's property on his own. The police don't know he's there. He doesn't call the police until after he's gone. What bothers me about this case, or maybe I'll say this whole line of cases, is that we are, by nature of our case law, forced into a multi-factor inquiry in which we have areas in which it's clear that the private party is acting on behalf of the police, areas in which it's not clear. And then we've got this huge middle area in which we have to fight about it. And this is a case in the middle area. The case that's the argument, or the way to state it in my view, the strongest for Mr. Boothroyd, I'll state and then you please respond. Yes, sir. We have a record of cooperation between the law enforcement authorities and PGE through Mr. Sprague. It's quite clear, given this record of cooperation, that when a police officer calls Mr. Sprague, when Deputy Thurman calls Mr. Sprague, he knows exactly what's going to happen. He knows that Mr. Sprague or somebody from the company is going to go out and investigate. Given that Deputy Thurman knows exactly what's going to happen, and given that Deputy Thurman has in his motivation law enforcement, and that's his job, which he's clearly doing in an effective way here, why is, in this circumstance then, has not the law enforcement asked PGE to serve as its agent? I understand, of course, that PGE has its own independent reasons for doing that. That's without dispute. But they don't like power being stolen from them. But I'm just reading from Cleveland, and it repeats variations of the same language in our earlier cases, including the on-bank case in Miller and so on. Cleveland says, We recognize that the mere existence of a legitimate, independent motive, apart from crime detection or prevention, does not immunize a search from scrutiny, regardless of the level of government involvement. That is to say, the mere fact that PG&E has an independent motivation, that in itself doesn't end the inquiry. Okay. It may not end it, but it is truly the critical point at which you analyze this. Now, why is it the critical point instead of just a factor along with the others? Because if you go back to Miller, and if you look for a while at the Miller facts, you realize that the FBI asked the victim, Please come to another state. We want you to look at some property. The police are actually begging and encouraging a victim to get involved. Listen to this out of Miller. All right. This is the on-bank court of Miller saying, Miller has pointed to nothing in the record to suggest that the officers encouraged Zomba Thief to act on their behalf or even planted the idea of conducting a private search. Well, the police officer here did encourage, did more than plant the idea. He knew darn well what PG&E was going to do in response. Then I would turn it around and ask, Are you now saying that Deputy Thurman should not have told PG&E, should have left them in the dark of a potential theft? Well, if it turns out that you're going to lose in this case, and this is a hard case. I mean, this is a borderline case. No, it's not at all that he shouldn't have called them. But if he called them, and if the complex effect, including that call, means that PG&E is operating as an agent, well, PG&E, then they've got to behave as an agent would do with warrants and so on. It doesn't mean he shouldn't have made the call, but it means once he makes the call, PG&E has to act as if it's an agent of law enforcement. Then I would just, I would continue with your hypothetical, Your Honor. PG&E, if it needed a warrant, didn't have probable cause to get one. We've already heard that they looked at the toll records, the billing records, and nothing out of order appeared. So there's no probable cause for them to get a warrant if they were an agent. Your hypothetical, I believe, would set up a brick wall where no one could act. PG&E couldn't act, and the police couldn't act. Let me take Judge Fletcher's hypothetical one step further. Let's take an airline carrier who may not carry certain goods such as oxygen tanks because of the risk of fire and explosion, as we saw with the value jet crash. If the rule were such that an FAA investigator could not call an airline to tell them that a shipment that had been delivered for carriage on an airplane might contain dangerous goods, true, that would be an FAA violation as well, but it's also a serious safety hazard for the airline and its passengers and crew. Should the policy of the law be to require the airline in that case to comply with the Fourth Amendment before it can conduct a search of the cargo to see whether or not dangerous goods have been loaded into the belly of the aircraft? I would submit no, Your Honor. That is too high of a problem. I tell you, you got the answer right. And that should be the policy of the law, shouldn't it, Mr. Stein? Absolutely. Absolutely. My time is almost up. I do believe Cleveland controls. That was the finding of Judge Haggerty by any standard. His analysis was correct, and I ask you to affirm. Thank you for your helpful argument. Response? Thank you. If I may just respond to the… What do we do about ValueJet? Well, about ValueJet, I'm going to say that absolutely the FAA must call, alert them. They should go and grab that oxygen, make sure it's not on the airplane. They should not hesitate during that phone call and tell the FAA investigator the origin of the package, the person to whom the package is addressed, information like that that is clearly about investigating the crime. The airline people should go, grab the package, get it off the plane, and afterwards everyone can do whatever investigating they need to do to prosecute the crime. But then you would file the motion to suppress when that evidence was sought to be introduced in the FAA criminal case against the shipper on the grounds, under your theory, on the grounds that it constituted a law enforcement-induced surge and therefore had to have complied with the Fourth Amendment. No, because the tip in this case is only part of that evidence. A tip all by itself from law enforcement to the private party would not be sufficient. Well, I guess what we're really focusing on in Cleveland is how extensive was the involvement here. In Cleveland, we said that a dual motive doesn't necessarily answer the question. The question is, is the involvement of law enforcement so extensive that it triggers Fourth Amendment application? And what factors would you point to us to suggest that the Fourth Amendment violation was triggered here besides the initial telephone tip to PGE? In Cleveland, the other factor is, as the Court notes, PGE called the police on that occasion for two purposes. One, the second one the Court mentions is in case evidence was revealed that would make the police want to do a search. But the first one was the protection of the PGE personnel. Cleveland said that the – the Court said in Cleveland that the reason Mr. Sprague called the police as a custom was to protect him and his people when they go into a dangerous situation. The police involvement in this case has absolutely nothing to do with protection. There's no mention of that here. So the police are not here. The police weren't asked to even be present for protection purposes. Correct. But that, I think, cuts against the government's position in that the only reason for police involvement in this search was one from which the Fourth Amendment protects us. In other words, they were not there to protect PGE personnel. PGE didn't call the police just because they're worried about their own safety. I don't see why the logical conclusion of your argument would not be that once they pick up the phone to pass the tip on to PGE that that now transforms PGE into state actors. And that's not how I read Cleveland. No, I agree with you. That's not what Cleveland says. Because if PGE said thank you for the information and they went out and conducted their search and they left the property and they told the police what they learned, there would not be a Fourth Amendment violation in this case. Is that essentially what happened here? I see this case as a lot closer to the Clevelandist facts than I do as falling sort of somewhere in between. Obviously, I must be missing something. It's only the other evidence of the private party's intent, Judge Talman. It's the cooperation ahead of time in that conversation that it's more than just taking the tip and going and doing their work. It's also what they do once their search is finished. In Cleveland, the court also notes that Mr. Sprague left when he was done. He was finished with his inspection. He told the police and he got out of there. In this case, that's not what's in the record. They meet with the deputies immediately after the search. They tell them what they saw, which makes absolute sense, but they continue. They tell them there's a discussion of, okay, how do we get access to this property? PGE says, I know. You can use our lock and key because we just put it on this customer's gate. But they do that all the time in order to facilitate the entry of their meter readers where the gate is located at some distance away from the meters, don't they? That's not unusual. I think it's going to be unusual that PGE actually then uses its key and lock to allow the police access to the property. No, no, no, no, no. I'm asking a different question, and that is that they would ask a customer to put a second lock on a gate also to facilitate entry onto the property of the meter reader. Yes, they have a legitimate reason for asking to do that. So it wasn't done solely to facilitate the entry of the police, which is why you're asking. No. It was not done solely for that. All right. No. Thank you very much. Thank you, counsel. Thank both counsel for a very useful argument in the case of United States v. Boothroyd. That case is now submitted for decision. The next case on our calendar has been submitted on the briefs, and that's United States v. Wilsey. The next case for argument is Hernandez-Reyes v. Lampert. When we first came on the bench, one of the attorneys was not yet here. Are both attorneys here for that case now? Okay.
judges: Reavley , W. Fletcher, Tallman